## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**STEPHEN M. REAMS**

**VERSUS**

**KIRSTJEN M. NIELSEN**

**CIVIL ACTION NO.**

**18-389-SDD-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 3, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

Certified- Return Receipt Requested 7018 0360 0001 1615 7558

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

STEPHEN M. REAMS

**VERSUS**

KIRSTJEN M. NIELSEN[1]

CIVIL ACTION NO.

**18-389-SDD-EWD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment ("Motion"), filed by defendant, Chad Wolf, Acting Secretary of the United States Department of Homeland Security ("Defendant").[2] Stephen Reams ("Plaintiff"), who is representing himself, filed an opposition memorandum.[3] Oral argument is not necessary. Having considered the Motion, supporting memorandum, and exhibits; Plaintiff's opposition memorandum; and applicable legal authorities, Defendant has established the elements of *res judicata*. Accordingly, it is recommended that the Motion be granted, and that all of Plaintiff's claims be dismissed with prejudice.

## I.    BACKGROUND

### A.    Preliminary Note

Although Plaintiff is representing himself, a "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs."[4] Indeed, "a *pro se* litigant is not 'exempt…from compliance with the relevant rules of procedural and substantive

---

[1] Kierstjen Nielsen, former secretary of the Department of Homeland Security, was terminated as a party on June 7, 2019 and Kevin McAleenan, acting secretary was substituted in her place.  Later, Chad Wolfe, who filed the instant Motion, was substituted by operation of law under Fed. R. Civ. Proc. 25(d), which provides for automatic substitution of a public officer.

[2] R. Doc. 59.

[3] R. Doc. 67.

[4] *See Berry v. LoanCity*, No. 18-888, 2020 WL 5750854, at *3, citing *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.,* No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)).

law.'[5] A pro se litigant is not entitled to greater rights than would be a litigant represented by a lawyer,"[6] and "[e]ven pro se litigants may not oppose summary judgment motions with unsworn material."[7] Finally, "pro se plaintiffs are not exempt from the rules of *res judicata*."[8]

All the facts in this section are taken from Defendant's Statement of Uncontested Facts.[9] First, the only competent summary judgment evidence came from Defendant.[10] Neither Plaintiff's Amended Complaint nor his opposition memorandum was sworn or verified under 28 U.S.C. § 1746. Second, Plaintiff did not file a proper statement of contested facts, as required by Local Civil Rule 56(c).[11] Accordingly, Defendant's Statement of Undisputed Material Facts are deemed admitted under Local Civil Rule 56(f) because they are properly supported by record citations.[12]

---

[5] *NCO Financial Systems, Inc. v. Harper–Horsley*, No. 07–4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

[6] *Id*. (citing *Birl*, 660 F.2d at 593).

[7] *Turner v. Baird*, 707 Fed. Appx. 290, 291 (5th Cir. 2017) (*per curiam*).

[8] *Murry v. General Services Administration*, 553 Fed. Appx. 362, 364 (5th Cir. 2014). *See also Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law. One who proceeds pro se with full knowledge and understanding of the risks involved acquires no greater right than a litigant represented by a lawyer…").

[9] R. Doc. 59-9.

[10] Although Plaintiff attached some documents to his original Complaint (R. Docs. 1, 1-1), those documents were not attached to his Amended Complaint (R. Doc. 41), which is the operative complaint in this matter. Nonetheless, the documents attached to Plaintiff's original Complaint were also submitted by Defendant in support of the Motion, so they have been considered in making this Report. *See* R. Doc. 1-1; R. Doc. 59-3, pp. 42-55.

[11] In addition to supporting memoranda, Local Civil Rule 56 requires a Motion for Summary Judgment to "be accompanied by a separate, short, and concise statement of the material facts" that the movant contends are undisputed. Likewise, a party opposing summary judgment must also include, along with its opposition, "a separate, short and concise statement of the material facts as to which the opponent contends there exists a genuine issue to be tried." Local Civil Rule 56. Here, while Plaintiff filed an opposition memorandum (R. Doc. 67), he did not file his own Statement of Facts, much less one (a) that complies with Local Civil Rule 56(c) by "admit[ting], deny[ing] or qualify[ing] the facts by reference to each numbered paragraph of the moving party's statement of material facts," or (b) that complies with Local Civil Rule 56(f), which requires "assertion[s] of fact set forth in a statement of material facts [to] be followed by a citation to the specific page or paragraph of identified record material supporting the assertion."

[12] Local Civil 56(f) states, "Facts contained in support or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment."

**B.      Relevant Factual and Procedural Background**

**i.      Plaintiff's Employment with FEMA**

In November 2005, Plaintiff joined the Federal Emergency Management Agency ("FEMA") as a "local hire."[13] About seven months later, Plaintiff received a temporary appointment in the Katrina Cadre-On-Call-Response Employee (CORE) program in the Mobile Homes Operations Group (Supervisory).[14] Plaintiff was based out of FEMA's Baton Rouge Field Office, and his official job title was CORE-SUP-PRO SPEC (Mobile Homes Ops).[15] Plaintiff's appointment was at the general schedule grade 13, step 1—*i.e.*, GS-13-1—with an annual salary of $74,074.00.[16]

Around January 8, 2007, FEMA notified Plaintiff that he was being "detailed to a temporary assignment" in FEMA's New Orleans field office.[17] Neither Plaintiff's pay, grade, and step, nor job title changed with this assignment.[18] In fact, Plaintiff received a *per diem*, which increased his total compensation, during his assignment to the New Orleans field office.[19] Plaintiff's assignment lasted about three months, after which he returned to the Baton Rouge field office.[20] Plaintiff's three-month assignment to the New Orleans field office led to the filing of his first Title VII EEO claim and, ultimately, this suit, which are discussed below.[21]

---

[13] R. Doc. 59-9, ¶ 1.

[14] *Id*. at ¶ 2. *See also* R. Doc. 59-2 (Dep. of Plaintiff in *Reams II*), p. 7, ln. 3 – p. 9, ln. 8; R. Doc. 59-3, pp. 1, 11. Plaintiff's temporary appointment was "not to exceed June 24, 2008." *Id*. at ¶ 2.

[15] *Id*.

[16] *Id*. at ¶ 3. *See also* R. Doc. 59-3, p. 1.

[17] *Id*. at ¶ 5. *See also* R. Doc. 59-2 (Dep. of Plaintiff in *Reams II*), p. 23, ln. 1 – p. 24, ln. 18; R. Doc. 59-3, p. 13.

[18] *Id*. at ¶ 6. *See also* R. Doc. 59-2 (Dep. of Plaintiff in *Reams II*), p. 8, ln. 25 – p. 9, ln. 8, p. 34, lns. 2-15.

[19] *Id*. at ¶ 6. *See also* R. Doc. 59-2(Dep. of Plaintiff in *Reams II*), p. 34, lns. 2-15.

[20] *Id*. at ¶ 5.

[21] *Id*. at ¶¶ 7-8. *See also* R. Doc. 59-2 (Dep. of Plaintiff in *Reams II*), p. 9, ln. 10 – p 10, ln. 4; R. Doc. 59-3, pp. 3-4.

On June 22, 2008, Plaintiff received a two-step promotion to GS-13-3.[22] His annual salary increased to $82,849.00.[23] However, Plaintiff's job title did not change.[24]

On May 28, 2009, FEMA terminated Plaintiff's employment "for misuse of position for private gain, personal use of government property, and misuse of time" stemming from Plaintiff's "[use] of government property, on government time, in a supervisory position, to solicit subordinates for personal gain [which] is contrary to the agency's mission and is conduct prejudicial to the best interest of the agency."[25] Plaintiff's termination led to the filing of his second Title VII EEO claim and a second suit in this Court, which are also discussed in detail below.[26]

### ii.    Procedural Background of this Case (*Reams II*) and *Reams I*

Plaintiff's three-and-a-half-year employment with FEMA produced two Title VII EEO claims, two lawsuits, and nearly fourteen years of litigation. Because both claims and cases are relevant to the resolution of the Motion, they are discussed below.

### a.    The Transfer Claim

On April 23, 2007, Plaintiff filed his first Title VII EEO claim—Agency Case No. 07-00079, alleging that FEMA, through Plaintiff's superior, George Smith, discriminated against him on the basis of race and gender when FEMA detailed Plaintiff to the New Orleans field office for

---

[22] *Id.* at ¶ 4. *See also* R. Doc. 59-2 (Dep. of Plaintiff in *Reams II*), p. 8, lns. 1-14; R. Doc. 59-3, p. 2.

[23] *Id.*

[24] *Id.*

[25] *Id.* at ¶ 9. *See* R. Doc. 59-5. *See also Reams v. Napolitano*, No. 14-88 (M.D. La.) ("*Reams I*"), at R. Doc. 66-1, pp. 4-9 (discussing Plaintiff's termination, the reasons for his termination, and the resulting Title VII EEO claim). Notwithstanding that the documents filed in *Reams I* are not attached to Defendant's Motion, the undersigned has taken judicial notice of all documents filed in *Reams I* and, where applicable, considered those documents in issuing this Report. *See Harrison v. Louisiana*, No. 15-6, 2015 WL 2185542, at *1, n.2 ("A court may take judicial notice of the record in prior related proceedings.") (internal citations omitted); *St. Cyr v. McDonald*, No. 07-539, 2008 WL 11351306, at *7 ("This court may take judicial notice of its own records."); *see also In re Arhens*, 182 B.R. 852, 854 (Bankr. S.D. Tex. June 11, 1990) ("A court may take judicial notice of its own records. This court may take judicial notice of the docket entries and pleadings filed in civil actions, bankruptcy cases, and adversary proceedings in this District.") (internal citations omitted).

[26] *Id.*

a three-month period in early 2007 (the "Transfer Claim").[27] The specific claim accepted for investigation was: "On January 8, 2007, you allege your duties and job title were changed, and you were moved to another work site, while a Caucasian (Female) was assigned to your duties."[28] Despite the opportunity to do so, Plaintiff did not object, clarify, or amend his claim.[29] The U.S. Department of Homeland Security, Office for Civil Rights and Civil Liberties ("CRCL") investigated Plaintiff's complaint.[30]

On August 20, 2013,[31] CRCL issued its final administrative decision on Plaintiff's Transfer Claim, concluding that Plaintiff "failed to prove that FEMA discriminated against [him] as he alleged."[32] Specifically, CRCL found that Plaintiff "failed to produce any evidence to show that the Branch Chief's reassignment of [Plaintiff] was not based on the needs of the office.  Thus, [Plaintiff] cannot show pretext, and he cannot show that his membership in a protected group motivated the Branch Chief to reassign him and replace him with a Caucasian female who was previously his subordinate."[33] The decision notified Plaintiff of his right to appeal the decision to the U.S. Equal Employment Opportunity Commission, Office of Federal Operations ("OFO") or to file a civil action in federal court.[34] Plaintiff appealed the decision to the OFO.[35]

---

[27] *Id.* at ¶ 7. *See also* R. Doc. 59-2 (Dep. of Plaintiff in *Reams II*), p. 9, ln. 9 – p. 10, ln. 4; R. Doc. 59-3, pp. 3-4.

[28] *Id.* at ¶¶ 7-8. *See also* R. Doc. 59-3, pp. 5-6.

[29] *Id.* at ¶ 8. *See also* R. Doc. 59-2 (Dep. of Plaintiff in *Reams II*), p 11, lns. 12-17, p. 35, ln. 16 – p. 36, ln. 1; R. Doc. 59-3, pp. 5-6.

[30] *See* R. Doc. 59-5, pp. 16-22.

[31] *See* R. Doc. 59-1, p. 13, n. 78 (explaining the discrepancy between the March 12, 2013 date on CRCL's final administrative decision and Plaintiff's receipt of same in August 2013).

[32] *Id.* at ¶ 12. *See also* R. Doc. 59-3, pp. 12-14; R. Doc. 59-4.

[33] *Id. See* R. Doc. 59-4, p. 5-6 ("You also have the right to file a civil action in an appropriate United States District Court withing 90 days after you receive this final decision if you do not appeal to the EEOC, or within 90 days after receipt of the EEOC's final decision on appeal.").

[34] *Id.*

[35] R. Doc. 59-9, ¶ 12; R. Doc. 59-3, p. 35, ¶ 7.

On January 15, 2015, OFO reversed CRCL regarding Plaintiff's Transfer Claim, finding that "discrimination on the bases of race and sex occurred as alleged."[36] OFO remanded the matter to CRCL to "conduct a supplemental investigation to determine the compensatory damages under Title VII to which [Plaintiff] is entitled as a result of the discrimination identified herein."[37] OFO advised that Plaintiff "shall be given an opportunity to establish a causal relationship between the discrimination and any pecuniary or nonpecuniary losses."[38] OFO further explained that even though its ruling "requir[es] [FEMA] to continue its administrative processing of your complaint," Plaintiff had the right to file a civil action in federal district court within ninety calendar days from receipt of the decision.[39]

CRCL conducted a supplemental investigation as ordered by OFO. Plaintiff participated in the investigation, and he submitted a demand for damages to the investigator on June 16, 2015.[40] Plaintiff's demand totaled $2,317,5480, which, according to Plaintiff, was incurred entirely as a result of his 2009 termination and a purported 2008 "FMLA violation," for which no EEO claim or lawsuit was filed.[41] On September 21, 2015, after completing its supplemental investigation, CRCL issued a final administrative decision awarding Plaintiff $10,000 in non-pecuniary

---

[36] R. Doc. 59-9, ¶ 13; R. Doc. 59-3, pp. 16-23.

[37] R. Doc. 59-3, p. 19.

[38] *Id*.

[39] *Id*. at p. 21 ("This is a decision requiring [FEMA] to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in the appropriate United States District Court within ninety (90) days from the date that you receive this decision…").

[40] R. Doc. 59-9, ¶¶ 14-15. *See also* R. Doc. 59-2 (Dep. of Plaintiff in *Reams II*), p. 30, ln. 3 – p. 40, ln. 8 (discussing Plaintiff's itemization and calculation of his damages); R. Doc. 59-3, pp. 24-33, 56-72 (same).

[41] *Id*.

damages.[42] Plaintiff was again advised that he could appeal this decision to the OFO or file a civil action in federal court.[43] Once again, Plaintiff elected to appeal the decision to OFO.[44]

On January 11, 2018, OFO affirmed CRCL's decision to award Plaintiff $10,000 in non-pecuniary damages on his Transfer Claim.[45] For the fourth time, Plaintiff was advised of his right to file a civil action in federal court regarding his Transfer Claim.[46] By this time, FEMA had already paid and Plaintiff had accepted the $10,000 award.[47]

On April 5, 2018, Plaintiff filed this suit—*Reams II*.[48] Plaintiff's operative complaint alleges "employment discrimination in violation of Title VII, of the Civil Rights Act of 1964 as amended, 42 U.S.C. Section 2000e-16."[49] Specifically, Plaintiff claims that FEMA discriminated against him on the basis of his race and sex (1) by "remov[ing] Plaintiff of his duties as Supervisor of Mobile Homes Operations and [giving] those duties those duties to a Caucasian female," who replaced Plaintiff when FEMA moved him to a "work site in New Orleans," and (2) by "requir[ing] Plaintiff to train another Caucasian female employee," who became Plaintiff's supervisor, even though Plaintiff was told that she would be his subordinate, all "without legitimate or nondiscriminatory reasons."[50] Plaintiff seeks "compensatory damages, court cost, and any and all damages which this Court deems just and proper."[51]

---

[42] R. Doc. 59-9, ¶ 15. *See also* R. Doc. 59-3, pp. 34-41.

[43] *Id*.

[44] R. Doc. 59-3, p. 42.

[45] *Id*. at pp. 42-51.

[46] *Id*.

[47] R. Doc. 59-2 (Dep. of Plaintiff in *Reams II*), p. 70, ln. 23 – p. 73, ln. 21.

[48] R. Doc. 1.

[49] R. Doc. 41.

[50] R. Doc. 41, p. 2.

[51] *Id*.

b.    **The Termination Claim**

On June 19, 2009, after his employment with FEMA was terminated, Plaintiff filed a second Title VII EEO claim–Agency Case No. 09-00248, alleging that the termination of his employment was (a) racially discriminatory, (b) FEMA's reasons for terminating Plaintiff were pretextual, and (c) FEMA's decision was retaliation for Plaintiff filing the Transfer Claim (the "Termination Claim").[52] The specific issues accepted for investigation were:

> On May 28, 2009, you allege that you were terminated for the same reason for which you were suspended. You feel you are being reprimanded twice for the same offense.

> On May 20, 2009, management placed you on non-pay/non-duty status for selling dinners and escorted you out of the building, while other employees who sold cookies and dinners were not disciplined.[53]

In its final administrative decision on Plaintiff's Termination Claim, CRCL found (a) that the "cause of [Plaintiff's] removal was his admitted activity, as a supervisor, of using government resources to conduct private fundraising for a family member in violation of Agency ethics rules and federal regulations," and (b) that Plaintiff "had not established that the Agency discriminated against him as alleged."[54] CRCL also found that FEMA's decision to fire Plaintiff was not discriminatory.[55] Plaintiff appealed CRCL's decision as to the Termination Claim to OFO.[56]

On December 19, 2013,[57] OFO affirmed CRCL's decision on Plaintiff's Termination Claim, and it notified Plaintiff that he "ha[d] the right to file a civil action…within ninety days" from receipt of the decision.[58]

---

[52] *Id*. at ¶¶ 9-11. *See also* R. Doc. 59-5, pp. 23-24

[53] R. Doc. 59-8, ¶ 9.

[54] *Id*. at ¶ 9-11. *See also* R. Doc. 59-5, pp. 25 – 28. *See also Reams I*, at R. Doc. 1-1, pp. 23 – 25.

[55] *Id*.

[56] *Id*.

[57] *Id*. at ¶ 10. *See also Reams I*, at R. Doc. 1-1, pp. 23-25.

[58] *Id*.

On February 10, 2014, Plaintiff filed his first suit—*Reams I*—in this Court.[59] Plaintiff alleged that FEMA terminated his employment in violation of Title VII of the Civil Rights Act of 1964.[60] Plaintiff attached several documents to his *Reams I* complaint, including documents related to Termination Claim[61] and documents related to the Transfer Claim.[62]

On August 16, 2017, after three-plus years of litigation, this Court granted the defendant's motion for summary judgment and dismissed all of Plaintiff's discrimination and retaliation claims in *Reams I*.[63] In so doing, this Court found (1) that Plaintiff had not made a *prima facie* case of discrimination because he failed to establish the fourth element—*i.e.*, that he was treated less favorably than other similarly situated employees who were not members of the protected class under nearly identical circumstances; (2) that even if Plaintiff had made a prima facie showing of discrimination, the defendant offered a legitimate nondiscriminatory reason for Plaintiff's termination—namely, his violation of FEMA ethics rules; (3) that Plaintiff cannot satisfy his burden of showing that FEMA's stated reasons were pretext because he cannot show (a) that similarly situated people outside of his protected class were treated differently under nearly identical circumstances or (b) that those reasons are false or unworthy of credence; and (4) that Plaintiff failed show that his engagement in protected activity—*i.e.*, the filing of the Transfer

---

[59] *Id*. at ¶ 11. *See also Reams I*, at R. Doc. 1.  In *Reams I*, Plaintiff was represented by counsel from the filing of his amended complaint through the Court's granting of Defendant's motion for summary judgment.

[60] *Id*. Specifically, Plaintiff alleged that he was terminated for an "alleged ethics violation," despite the "violation [being] common practice within the agency" and Plaintiff being "the only one to have been reprimanded for this action." *Reams I*, at R. Doc. 1, pp. 1-2.

[61] *See Reams I*, at R. Doc. 1-1, pp. 1-13, 21-32.

[62] *Id*. at pp. 14-16 (Summary of Investigation for Transfer Claim) and pp. 17-20 (Affidavit of Plaintiff in Transfer Claim).

[63] *Reams I*, at R. Docs. 80, 81.

Claim—was the but for cause of his termination.[64] Plaintiff did not appeal this Court's ruling in *Reams I*, and it is a final judgment on the merits.[65]

### C.    Defendant's Motion and the Parties' Arguments

Defendant moved for summary judgment on Plaintiff's claims, arguing that this matter is precluded by the application of *res judicata*.[66] Specifically, Defendant alleges that all four elements of *res judicata* are met because (1) the parties in *Reams I* and *Reams II* are the same, (2) a court of competent jurisdiction—*i.e.*, this Court—issued the judgment in *Reams I*, (3) which is a final judgment on the merits, and, (4) under the "transactional test," the causes of action raised by Plaintiff in *Reams I* and *Reams II* are the same.[67]

Plaintiff filed a two-page opposition to the Motion.[68] Plaintiff notes that *res judicata* and collateral estoppel "impl[y] that the facts in the case before the court have been adjudicated in another court proceeding and arose out of the same set of facts and circumstances." However, while acknowledging that "both claims may involve many of the same actors," Plaintiff contends the claims in *Reams I* and *Reams II* are "separate and distinct." Specifically, Plaintiff argues that his claims in *Reams I* and *Reams II* "arise out of a different set of events," involve "different" causes of action, and "the damages sustained are different." Further, Plaintiff argues that his "previous case was one in which [he] asserted that [he] was wrongfully terminated," while the "issues in the current case relate solely to the stripping of his duties as a Supervisor of Mobil Homes Operations and giving those duties to a white female who had neither the grade level,

---

[64] *Reams I*, at R. Doc. 80.

[65] *See Diece-Lisa Indus., Inc. v. Disney Enterprises, Inc.*, 943 F.3d 239, 247 (5th Cir. 2019) ("A final judgment is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment") (internal quotations and citations omitted).

[66] R. Doc. 59.

[67] R. Doc. 59-1, pp. 10-18.

[68] R. Doc. 67, p. 1. As noted above, Plaintiff's opposition does not comply with Local Civil Rule 56. *See* n. 10, *supra*.

experience or qualifications that [he] possessed…[and] have never been presented in this court or any other court." Finally, Plaintiff reiterated that he is seeking "compensation for the damages [he] sustained because of the humiliation, mental anguish, damage to [his] reputation and emotional impact that was caused by the discriminatory actions of [Defendant]."

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[69] A party moving for summary judgment must explain the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact.[70] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[71] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[72] Rather, Rule 56 requires that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[73] Summary judgment is appropriate in any case where the evidence is

---

[69] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[70] *Celotex Corp.*, 477 U.S. at 322.

[71] *Anderson*, 477 U.S. at 248.

[72] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[73] *Celotex Corp.*, 477 U.S. at 323.

so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[74] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[75]

### B. *Res Judicata* and Application to Plaintiff's Claims

"Res judicata prohibits the re-litigation of claims that were, *or could have been*, raised in the prior action."[76] The test for whether *res judicata* bars a claim has four elements: "(1) both suits involved identical parties; (2) there is an existing final judgment on the merits that was (3) rendered by a court of competent jurisdiction; and (4) the suits involved the same claim or cause of action."[77] The Fifth Circuit uses a "transactional test" to determine "whether both suits involve the same cause of action," and the "critical issue" under that test is "whether the two actions are based on the same nucleus of operative facts."[78] Put differently, "[u]nder the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff 'with respect to all or any part of the transaction, or series of transactions, out of which the original action arose.'"[79]

"[A] plaintiff who brings a Title VII action and files administrative claims with the EEOC must still comply 'with general rules governing federal litigation respecting other potentially viable claims," such as *res judicata*.[80] "[T]he language and policy of Title VII does not undercut

---

[74] *Little*, 37 F.3d at 1075.

[75] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

[76] *Blair v. Yum! Brands, Inc.*, 832 Fed. Appx. 893, 894 (5th Cir. 2021) (per curiam) (citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 312-13 (5th Cir. 2001) ("*Davis II*") (emphasis supplied). *See also Alfred v. Louisiana*, No. 14-298, 2015 WL 1781556, at *1 (M.D. La. Apr. 20, 2015) ("*Res judicata* bars duplicative and redundant litigation involving the same parties and the same claims.").

[77] *Id*. (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 572 (5th Cir. 2005). *See also Alfred*, 2015 WL 1781556, at *1.

[78] *Id*. (citing *Test Masters*, 428 F.3d at 572).

[79] *Davis II*, 383 F.3d at 313 (quoting *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395-96 (5th Cir. 2004)).

[80] *Id*. at 316 (quoting *Woods v. Dunlop Tire Corp*., 972 F.3d 36, 39-40 (2nd Cir. 1992)).

the application of res judicata, and we see no reason militating against application of well settled preclusion principles."[81] As such, the fact that Plaintiff brought a Title VII action related to the Termination Claim in *Reams I* while simultaneously pursuing an administrative action regarding the Transfer Claim does not preclude the application of *res judicata* in this case provided that all four elements are met.

Here, the parties do not dispute that the parties in *Reams I* and *Reams II* are identical, nor do they dispute that this Court—a court of competent jurisdiction—rendered a judgment in *Reams I*, which is a final judgment on the merits. Thus, the first three elements of the *res judicata* test are met.

The parties' sole dispute is whether the fourth element is met. As noted above, the Fifth Circuit applies the "transactional test to determine if later-brought claims are precluded by an earlier brought suit."[82] "The critical issue under the transactional test is whether the two actions are based on the 'same nucleus of operative facts.'"[83] "What grouping of facts constitutes a 'transaction' or a 'series of transactions' must 'be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[84] Further, to determine whether res judicata applies in situations involving separate EEO claims spawning separate civil actions, the Fifth Circuit uses the following two-part inquiry: (1) whether the claims in the subsequent suit were part

---

[81] *Id*. (quoting *Woods*, 972 F.3d at 39).

[82] *Murry v. Genera Services Admin.*, 553 Fed. Appx. 362, 365 (5th Cir. 2014) (citing *Davis II*, 383 F.3d at 313)).

[83] *Id*. (quoting *Davis II*, 383 F.3d at 313).

[84] *Id*., quoting *Davis II*, 383 F.3d at 313 (quoting Restatement (Second) of Judgments § 24(2) (1982)).

of the same cause of action as the claims in the prior action, and (2) whether the claims in the subsequent suit could have been advanced in the prior suit.[85]

In *Davis II*, two African-American municipal transit police officers filed suit against the Dallas Area Rapid Transit ("DART") and its chief, Juan Rodriguez ("Rodriguez"), on June 26, 2002, alleging race discrimination, retaliation, and a hostile work environment in violation of Title VII and 42 U.S.C. § 1981, § 1983, and § 1988 based on a series of "incidents of discrimination and retaliation that occurred between March 2001 and April 2002, including complaints that [plaintiffs] had been wrongly excluded from the lieutenant promotion process between December 2001 and April 2002."[86] The district court dismissed plaintiffs' claims on summary judgment, concluding (1) that plaintiffs "failed to present a genuine issue of material fact about whether their nonelection for lieutenant promotions was based on either race discrimination or retaliation," and (2) that plaintiffs' "remaining claims, predating and unrelated to the lieutenant promotion process at DART, were precluded as res judicata by the judgment in *Davis I*."[87] The *Davis II* plaintiffs appealed.

After noting that only the fourth element of the *res judicata* test was at issue in the district court, the Fifth Circuit explained that to assess the propriety of the district court's grant of summary judgment, it "must determine (1) whether the barred claims were part of the same cause of action as the claims in *Davis I,* and (2) whether the barred claims could have been advanced in *Davis*

---

[85] *Davis II*, 383 F.3d at 313.

[86] *Davis II*, 383 F.3d at 312.

[87] *Davis II*, 383 F.3d at 312. Plaintiff previously filed suit against DART and Rodriguez on November 16, 2001 in state court, which was removed to the U.S. District Court for the Western District of Texas. *See Davis & Johnson v. DART & Rodriguez*, Civil Action No 3:01-CV-2595-M (W.D. Tex.) ("*Davis I*"). In *Davis I*, plaintiffs alleged race discrimination and retaliation under Title VII and violations of the First and Fourteenth Amendments under 42 U.S.C § 1983. The purportedly discriminatory and retaliatory conduct at issue in *Davis I* occurred between November 1998 and February 2001. In February 2002, the district court dismissed plaintiffs' claims in *Davis I* with prejudice. *Id*. at 312 and ns. 1-3. *Davis II* was filed several months after *Davis I* was dismissed.

*I*."[88] Regarding the first question, the Fifth Circuit used the "transactional test." After "reviewing the facts contained in each complaint," the Fifth Circuit determined—over plaintiffs' argument that the claims in each case stemmed from different conduct occurring at different times—that the claims in *Davis I* and *Davis II* "constitute[d] a series of connected transactions and the same claims."[89] Specifically, the Fifth Circuit noted that the complaints in *Davis I* and *Davis II* alleged "wrongful conduct toward the [plaintiffs] motivated by racial discrimination and was retaliation for previous [EEOC] charges the [plaintiffs] had filed," as well as the fact that plaintiffs "continue[d] to publicly speak out against race discrimination."[90] Additionally, after noting that "subsequent wrongs by a defendant constitute new causes of action" and that "[a] Title VII plaintiff is free to bring successive actions, claiming in each that his employer has taken retaliatory actions against him more recent that the prior lawsuit," the Fifth Circuit explained that these principles did not aid the plaintiffs because the conduct "alleged in *Davis II* occurred before *Davis I* was filed."[91]

As to the second inquiry, the Fifth Circuit addressed plaintiffs' argument that the *Davis II* claims were "properly excluded…from *Davis I* because [plaintiffs] did not receive EEOC right-to-sue letters on the [*Davis II*] allegations until April 1, 2020," two months after *Davis I* was dismissed.[92] After noting that it had "never directly addressed whether a Title VI claim may be barred by *res judicata* if, at the time of the earlier suit, the plaintiffs have not yet received a right-to-sue letter," the Fifth Circuit, joining several sister circuits, held in the affirmative.[93] Specifically,

---

[88] *Davis II*, 383 F.3d at 313.

[89] *Id*. at 313-16.

[90] *Id*. at 314.

[91] *Id*.

[92] *Id*. at 314-16.

[93] *Id.* at 315 and cases discussed there. *See, e.g.*, *Woods v. Dunlop Tire Corp.*, 972 F.2d 26 (2nd Cir. 1992) (holding that a plaintiff's Title VII claims were barred by *res judicata* even though she had not received right-to-sue letter at the time she filed the first suit where Plaintiff's Title VII claims arose out of the same transaction as her previously filed Labor Management Relations Act claim ); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714-15 (9th Cir. 2001) (holding that plaintiff's Title VII claims were barred by *res judicata* where plaintiff failed to amend

the Fifth Circuit concluded that "the claims precluded in *Davis II* were so connected in time and space with the claims in *Davis I*, that they could have, and should have been brought in the first action to create a single, convenient trial unit."[94] "Because the barred claims arose from the same nucleus of operative facts as the claims in *Davis I* and they predate that action, [plaintiffs] were on notice to include those claims in *Davis I*."[95] To prevent res judicata from barring those claims, the *Davis II* plaintiffs "could have requested a stay in *Davis I* until they received their [right-to-sue] letters" or taken other measures to avoid preclusion under *res judicata* while they pursued the requisite Title VII remedies.[96]

Here, the reasoning in *Davis II* and similar cases[97] is equally applicable to Plaintiff's claims. The complaints in *Reams I* and *Reams II* assert causes of action for "employment discrimination in violation of Title VII, of the Civil Rights Act of 1964 as amended, 42 US.C. Section 2000e-16."[98] While the facts in each complaint are scant, Plaintiff complains of purportedly discriminatory and retaliatory conduct occurring "during his tenure as an employee of FEMA's Joint Field Office in Baton Rouge, Louisiana," beginning with the issues raised in the

---

complaint, seek a stay of proceeding, or obtain a right-to-sue letter); *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.3d 223, 225-26 (7th Cir. 1993) ("Parties to Title VII actions enjoy no immunity from res judicata[.]").

[94] *Davis II*, 383 F.3d at 314.

[95] *Id*.

[96] *Id*. at 316.

[97] See, e.g., *Murry*, 553 Fed. Appx. 362 (finding that pro se plaintiff's Title VII action (*Murry II*) was barred by res judicata because (a) (1) plaintiff's claims arose from the "same continuing course of allegedly discriminatory conduct [by defendant], beginning in 2000 and culminating in her termination in 2003" at issue in *Murry I*; (2) "the allegedly unlawful conduct was motivated by the same alleged racial and disability animus in both cases, and the alleged retaliation was in response to the same EEOC filings"; and (3) all of the "allegedly unlawful acts occurred before the filing of *Murry I*," including the unlawful acts at issue in *Murry II*; and (b) finding that plaintiff was "on notice" to include the claims raised in *Murry II* in *Murry I* and "could have: (1) asked for a stay in *Murry I* to await the conclusion of *Murry II*; (2) brought *Murry II* in the district court, rather than pus an EEOC appeal; or (3) brought *Murry II* in the district court once the 180-day period following filing of the EEOC appeal expired" but failed to take any action to prevent preclusion by *res judicata*).

[98] R. Doc. 41, p. 1. *See also Reams I*, at R. Doc. 1, ¶ 1 ("Complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964"); R. Doc. 49, ¶ 8 (noting Plaintiff's belief "that the allegations relied upon to terminate him were pretextual in nature and merely a subterfuge of the discriminatory actions based upon his race and retaliation.").

Transfer Claim (*Reams II*) and concluding with the issues raised in the Termination Claim (*Reams I*). Plaintiff also claims that the animus underlying the discriminatory and retaliatory conduct at issue in both cases was based on his race and gender, as well as his filing of the Transfer Claim.

Despite Plaintiff's attempt to avoid summary judgment by arguing that the claims in *Reams I* and *Reams II* are "separate and distinct," the record is replete with statements by Plaintiff that he does not see the discriminatory and retaliatory acts at issue in *Reams I* and *Reams II* as "two separate things…because the discrimination continued even after [George Smith] was released [as a result of Plaintiff's Transfer Claim]. It never stopped. The case remained open."[99] At one time, Plaintiff described the discrimination and retaliation he allegedly suffered as "ongoing" and part of a pattern that "persisted" after he was transferred to the New Orleans field office for three

---

[99] R. Doc. 59-6 (Dep. of Plaintiff in *Reams I*), p. 154, ln. 23 – p. 155, ln. 4. *See also, e.g.*, R. Doc. 59-6 (Dep. of Plaintiff in *Reams I*), p. 61, ln. 6 – p. 62, ln. 22 (testifying that he "won" the case regarding his Transfer Claim, and discussing his belief that winning the Transfer Claim, which resulted in George Smith being terminated, is related to the Termination Claim because Plaintiff's supervisor, Nora Huete, "terminated [plaintiff] based on [his] prior participation" in that claim), p. 105, ln. 25 – p. 106, ln. 7 (confirming that Plaintiff is claiming that he was "retaliated against and that they changed his duty station because of his prior EEO case"), p. 107, ln. 9 – p. 108, ln. 21 (explaining (1) that he sees all the discriminatory and retaliatory conduct, including his termination, "as a carryover from the initial action" because "[b]ut for the initial action" his termination would not have occurred, (2) that he was discriminated against and retaliated against "because of his skin…[and] due to what happened initially with the Smith case," and (3) that "[b]ecause of the initial racial actions that was conducted by George Smith, it allow all these things to happen [to Plaintiff]"), p. 249, ln. 16 -p. 252, ln. 252 (explaining Plaintiff's position (1) that "the initial discrimination that occurred in 200[7] was never resolved. And there was all the actions that continued after 200[7] was the continuation of the discrimination that began under George Smith," (2) that FEMA "did not rectify the problem" raised in the Transfer Claim, which "just continued," (3) that the facts in *Reams I* and *Reams II* "overlap," and (4) that the issues in "[o]ne would not happen, unless the other happened"), and p. 257, lns. 10-19 (explaining Plaintiff's belief that there was a pattern of discrimination that "stems back to the initial complaint of '0[7]," which "was not remedied" and "persisted."); R. Doc. 59-7 (Plaintiff's Discovery Reponses in *Reams I*), at answers to interrogatories no. 1 and no. 5 (discussing "each incident of alleged intentional discrimination," beginning with George Smith "strip[ing]" Plaintiff of his duties and transferring him to the New Orleans office for three months and concluding with George Smith being fired after Plaintiff filed the Transfer Claim with the EEOC, and explaining Plaintiff's belief that he was retaliated against because he filed the Transfer Claim about George Smith's discriminatory practices); R. Doc. 59-2 (Dep. of Plaintiff in *Reams II*), p. 34, ln. 22 – p. 35, ln. 22 (explaining Plaintiff's position that "none of the other things could have happened...including termination…would not have happened but for the initial discrimination," (2) that "everything that happened as a result of the initial discrimination was the direct cause and effect from the initial discrimination," and (3) that the "discrimination was ongoing"); p. 36, ln. 2 – p. 37, ln. 6 (discussing his "lost wage damages" in this case and confirming that, while those damages relate to his 2009 termination, he is seeking those damages in this case because his termination "would not have occurred [but for the initial discrimination].").

months and filed the Transfer Claim.[100] At yet another, Plaintiff admits that the facts in *Reams I* and *Reams II* "overlap,"[101] so much so that he attached documents related to his Transfer Claim to his Complaint in *Reams I*.[102] Notably, Plaintiff attempted to use the documents related to and evidence submitted in the Transfer Claim to establish retaliation in *Reams I*,[103] which was considered by the Court in its Ruling granting the defendants' motion for summary judgment in that case.[104]

Under the transactional test's pragmatic considerations, the conduct underlying the claims in *Reams I* and in *Reams II* constitute a series of connected transactions and arise from the same nucleus of operative facts. The claims are closely related in time, space, origin, and motivation, and they form a convenient trial unit, which conforms to the parties' expectations, as evidenced by Plaintiff's statements. Importantly, the conduct forming the basis of Plaintiff's claims in this case predates—and, according to Plaintiff, is the precursor to—the conduct complained of in *Reams I*. As such, the causes of action in *Reams I* and *Reams II* are the same for purposes of *res judicata*.

Plaintiff was on notice to include the claims in this case in *Reams I* because the claims here arose from the same nucleus of operative fact as the claims in *Reams I* and predate that action. Additionally, unlike the plaintiffs in *Davis II* and *Murry*, Plaintiff was notified at least two times of his right to file a civil action on his Transfer Claim prior to his filing of *Reams I* (and three times

---

[100] *See* R. Doc. 59-2 (Dep. of Plaintiff in *Reams II*), p. 35, lns. 16-22; R. Doc. 59-6 (Dep. of Plaintiff in *Reams I*), p. 257, lns. 4-14.

[101] *See* R. Doc. 59-6 (Dep. of Plaintiff in *Reams I*), p. 251, ln. 17.

[102] *See, e.g.*, R. Doc. 59-5, pp. 16 – 22.

[103] *See, e.g.*, *Reams I*, at R. Doc. 70, pp. 7-8 (arguing that Plaintiff was retaliated against for filing a "successful EEOC action which led to the termination of George Smith," and that after his successful EEOC action, Plaintiff was a "marked man at FEMA" and his "supervisors were actively trying to find anything to terminate him.")

[104] *See* R. Doc. 80, pp. 33-37.

prior to his claims in *Reams I* being dismissed with prejudice).[105] Despite this, Plaintiff did not include the claims related to his 2007 transfer in *Reams I*, and he elected to continue the administrative process on his Transfer Claim. However, Plaintiff's decision to continue with the administrative process on his Transfer Claim rather than file a civil action does not preclude the application of *res judicata*.[106] As has been explained by other courts, "to avoid the sting of res judicata,"[107] Plaintiff could have requested a stay in *Reams I* pending the resolution of the administrative process on his Transfer Claim, joined his Transfer Claim at some point after receiving several letters notifying him of his right to file suit, or taken some other measure to avoid preclusion under *res judicata* while he pursued the Transfer Claim. He did not. Plaintiff could and should have asserted all claims relating to his 2007 transfer in *Reams* I, which was pending in this Court from February 10, 2014 to August 16, 2017. "*[R]es judicata* exists precisely to avoid this kind of serial, successive litigation of claims arising out of the same series of transactions."[108]

There are no material facts in dispute. Plaintiff's claims in this action are barred by *res judicata*.[109] Accordingly, it is recommended that Defendant's Motion be granted and that all of Plaintiff's claims against Defendant be dismissed with prejudice.

## III.    CONCLUSION AND RECOMMENDATION

Because Defendant has established all four elements of *res judicata*, and as Plaintiff has failed to provide sufficient evidence to create a genuine issue of material fact as to any of those

---

[105] *See* ns. 38, 48, and 52, *supra*.

[106] *See Murry*, 553 Fed. Appx. at 366 (noting that, among other things, plaintiff could have filed *Murry II* in federal district court instead of pursuing an EEOC appeal to avoid the application of *res judicata*).

[107] *See Davis II*, 383 F.3d at 315.

[108] *Murry*, 553 Fed. App. at 366.

[109] As this Report concludes that Plaintiff's claims are barred by *res judicata*, Defendant's alternative arguments regarding sovereign immunity and collateral estoppel are not addressed.

elements, it is **RECOMMENDED** that the Motion for Summary Judgment,[110] filed by Defendant, be **GRANTED** and that all of Plaintiff Stephen Reams's claims be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send a copy of this Report and Recommendation to Plaintiff Stephen Reams, by certified mail, return receipt requested, at his address of record on PACER.

Signed in Baton Rouge, Louisiana, on March 3, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[110] R. Doc. 59.